## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

_____

BOARD OF EDUCATION OF
ALBUQUERQUE PUBLIC SCHOOLS,

        Plaintiff,

v.                                                     No.  16-cv-1082 WJ/WPL

ROLANDA MAEZ and RICHARD
MONDRAGON, on behalf of M.M.,

        Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO STAY AND SET ASIDE ADMINISTRATIVE ORDER AND MODIFYING HEARING OFFICER'S FINAL DECISION PENDING RESOLUTION OF THIS CASE ON THE MERITS

THIS MATTER comes before the Court upon the Motion to Stay and Set Aside Administrative Order Requiring APS Pay for Private Services APS Can Provide In-House (**Doc. 3**), filed on September 30, 2016 by the Board of Education of Albuquerque Public Schools ("Plaintiff" or "APS").  The Complaint in this case seeks review of a final decision rendered by the Due Process Hearing Officer ("DPHO") on August 31, 2016. The underlying administrative due process proceedings were conducted pursuant to the Individuals with Disabilities Education Act, 20 U.S.C., §§ 1400 et seq. ("IDEA").  Having reviewed the parties' pleadings and the applicable law, the Court finds that Plaintiff's motion is well-taken and shall be granted in that the remedy ordered by the DPHO shall be modified during the pendency of this lawsuit.

### BACKGROUND

The IDEA's overarching purpose is to ensure that children with disabilities receive a free appropriate public education ("FAPE") that "emphasizes special education and related services

designed to meet their unique needs and prepare them for employment and independent living."

20 U.S.C. § 1400(d)(1)(A) (2000). The centerpiece of the IDEA is the student's individualized

education program ("IEP"). 20 U.S.C. §1401(11) (2000).  A team of specialists and educators

must develop for each student covered by the IDEA an IEP to guide his or her education.  The

IEP is a written statement that sets forth the child's present performance level, goals and

objectives, specific services that will enable the child to meet those goals, and evaluation criteria

and procedures to determine whether the child has met the goals.  *Ass'n for Cmty. Living in Colo.*

*v. Romer*, 992 F.2d 1040, 1043 (10th Cir.1993).  If they are unhappy with the outcome, the

student's parents may file a complaint to challenge the IEP through a due process hearing.  20

U.S.C. §1415(g) (2000); *see also Chavez ex rel. M.C. v. New Mexico Public Educ. Dept.*  2010

WL 3929436, *1 (10th Cir. 2010).  In the underlying administrative case, Defendants (the

parents of M.M.) challenged the classroom setting where M.M.'s IEP would be provided by

APS.

M.M. is a thirteen year-old student who is autistic. He does not speak and has no

functional communication system.  M.M. attended Lyndon B. Johnson Middle School within

APS for the 2015-2016 school year as a sixth grader. During that school year, Defendants

demanded that APS move M.M. into another classroom known as "Emerging Autism" rather

than the Intensive Support Program ("ISP") classroom in which he was enrolled. APS's position

was that M.M.'s "global deficits" would be best addressed within the classroom in which he was

enrolled, which was labeled as an Intensive Support Program ("ISP").  These global deficits

included delays in cognitive abilities, sensory processing, behavior skills and communication

which could not be explained by the presence of autism alone.

2

Pursuant to Defendants' demand, the IEP team reconvened in December 2015 and January 2016 to consider placing M.M. in another classroom.  As a result of that meeting, the IEP team crafted a "hybrid" placement for M.M. that would provide M.M. with 4 hours of service in an ISP classroom and 2 hours in an Emerging Autism classroom to run for a trial period of 8 weeks.  However, on February 4, 2016, two days after M.M. began attending the hybrid program, Defendants withdrew their son from school.

In March 2016, Defendants filed a request for a hearing with the New Mexico Public Education Department for a due process hearing against APS pursuant to the IDEA.  The Final Decision found in favor of APS in part and in favor of Defendants in part.[1] Final Dec. (Doc. 1-1). The Final Decision did not require that APS move the Student into the classroom preferred by Defendants, but did conclude that M.M. was denied a FAPE for a portion of the statutory period, from August 15, 2015 until February 1, 2016 and that M.M.'s communication skills had regressed during this period.   Fin. Dec. at 11, ¶24. Nevertheless, the DPHO found that Defendants' decision to withdraw M.M. from the school "was not justified" and denied APS the opportunity to offer M.M. a FAPE in his new placement.  Fin.Dec. at 4. The DPHO also found that the District "had resources available that could be used to put in place an appropriate program" for M.M. in the ISP class.  Fin. Dec. at 25.

The DPHO found that M.M had made progress in speech and language during his fifth grade year.  She also found that while the Speech Language Pathologist  ("SLP") who worked with M.M. did not have extensive experience working with autistic students, APS had available a high-quality and experienced Autism Resource Team which provided assistance to the classroom staff in working with M.M. on intensive, autism-specific techniques and services that were

---

[1]  The DPHO's findings are contained in the Final Decision, attached to the Complaint as Ex. A.  *See* Doc. -1-1.  Specific citations to the record are included in the parties' briefs.

appropriate for him.   The DPHO ordered that M.M. would be provided 720 minutes of speech and language therapy a semester for the 2016 school year.  Fin.Dec. at 29, ¶7.

APS appeals that portion of the DPHO's decision that awards M.M. additional 40 hours of speech and language therapy provided by a *private* provider of the parent's choice who meets APS standards, and which APS estimates will cost $5,000.  The DPHO ordered that the 40 additional hours "may be scheduled during the summer of 2017 or after school during the school year" and that APS "shall reimburse Parents for the cost of this therapy."  Fin.Dec. at 29, ¶8.[2]

The Final Decision requires that APS reimburse the parents for the cost of this therapy. Fin. Dec. at 29, ¶8.  Plaintiff filed this lawsuit as an appeal of those portions of the Final Decision which were not in its favor.  The complaint contains four counts:

Count I:   the DPHO inappropriately shifted the burden of proof from the parents to APS to prove that APS had violated the IDEA;

Count II:  the DPHO erred in requiring the District to place M.M. in a school that was not his neighborhood school thereby violating the federal requirement to serve students in their least restrictive environment;

Count III:  the DPHO exceeded her authority by imposing a remedy that is prospective rather than compensatory in nature and by awarding impermissible and excessive monetary damages; and

---

[2] Plaintiff argues that the Final Decision did not necessarily order the additional 40 hours of therapy to be provided *outside* of normal school hours, as envisioned by Defendants, *see* Doc. 8 at 3 & Doc. 12 at 8.  However, the Court would assume that services which are provided either during a *summer* or *after* school are necessarily *outside* of normal school hours.

Count IV:  the DPHO exceeded her authority by delegating her statutory authority to an IEP team.

**DISCUSSION**

In this motion requesting a stay of the Final Decision, Plaintiff seeks injunctive relief only.  It asks the Court to postpone until the case has been decided on the merits, the portion of the remedy ordered by the DPHO requiring APS to expend tax dollars for forty (40) hours of private speech and language therapy ("SLT") services for M.M.  *See* Ex. A to the Complaint (DPHO's Final Dec.).   Plaintiff disputes the administrative tribunal's jurisdiction to order payment for *private* SLT services because (1) there was no explanation in the Final Decision for the amount of private services ordered; and (2) there was no finding that APS cannot provide such services directly by in-house staff.  Plaintiff also contends that the DPHO's decision is an irresponsible misuse of public money.

## I.      IDEA's "Stay Put" Provision

Defendants contend that APS cannot show entitlement to injunctive relief, but also claim that the IDEA's "stay put" provision, 20 U.S.C. §1415(j) controls here.  This provision requires a school to provide the remedy ordered by the DPHO during the pendency of any appeal by the school district.  An administrative decision in favor of the parents is "equivalent to an agreement between the state agency and the parents" and therefore "represents the child's current education placement for purposes of the IDEA's stay put" provision."  *Miller v. Bd. of Educ. of Albuquerque Public Sch.*, 565 F.3d 1232, 1239 (10th Cir. 2004).  The "stay put" provision of the IDEA acts "in essence, as an automatic preliminary injunction" reflecting Congress's conclusion "that a child with a disability is best served by maintaining her educational status quo until the

disagreement over her IEP is resolved." *M.R. v. Ridley Sch. Dist.*, 744 F.3d 112, 118 (3d Cir. 2014).

However, the "stay put" provision was never intended to eliminate the function of traditional injunctive relief. The character and purpose of the IDEA's "stay put" provision is distinct from that of equitable injunctive relief.  A motion for stay put "functions as an 'automatic' preliminary injunction, meaning that the moving party need not show the traditionally required factors (e.g., irreparable harm) in order to obtain preliminary relief.'" *Joshua A. v. Rocklin Unified Sch. Dist.*, 559 F.3d 1036, 1037 (9th Cir. 2009) (emphasis added). Here, however, the motion is for a preliminary injunction that would affect the stay put invocation.  Thus, a motion for stay put *invokes* the provision, while a motion for injunctive relief modified or delays the stay put provision.  *See, e.g., N.D. ex rel. parents acting as guardians ad litem v. Hawaii Dept. of Educ.*, 600 F.3d 1104, 1112 (9th Cir. 2010).  Further, the IDEA statute itself recognizes a district court's equitable power to order a change in a child's then-current placement.  *See* §1415(i)(2)(B)(iii) (district court is empowered to "grant such relief as the court determines is appropriate").  Of course, any preliminary injunction entered under §1415(i)(2)(B)(iii) is "by no means automatic," and the party seeking such an injunction bears the burden of demonstrating entitlement to such relief under the standards generally governing requests for preliminary injunctive relief." *Wagner v. Bd. Of Ed. Of Montgomery County,* 335 F.3d 297, 302-03 (4th Cir. 2003) (treating request for change in a child's "stay put" placement as a request for a preliminary injunction), cited in *Meza v. Bd. Of Educ. Of the Portales Mun. Sch.,* No. Civ. 10-0963 JB/WPL, 2011 WL 1128876 at *10; *see also Johnson ex rel. Johnson v. Special Educ. Hearing Office, State of Cal.*, 287 F.3d 1176, 1180 (9th Cir. 2002) (request to

enjoin a preexisting "stay put" order is "handled appropriately by the district court's application of traditional preliminary injunction analysis").

Defendants offer no legal authority to the contrary.  They rely to a large extent on *Miller ex rel. S.M. v. Bd. Of Educ. Of APS,* 565 F.3d 1232, 1251 (10th Cir. 2009).  In that case, the DPHO ruled partially in the parents' favor, ordering APS to reimburse them for private language therapy for their son.  The Administrative Appeal Officer ("AAO") agreed with most of the DPHO's decisions, including the language therapy reimbursement.  APS filed an application for a preliminary injunction in federal court, seeking to enjoin the enforcement of the AAO's order requiring reimbursement to the parents for private language therapy.  The district court in *Miller* applied the IDEA's "stay put" provision, and then proceeded to review APS' claim under traditional equitable doctrine, concluding that the interests weighed against granting the injunction.  565 F.3d at 1239.  Defendants contend that APS has no procedural option at this point except to pay for the DPHO-mandated private SLT services under the "stay put" provision and that a consideration of equitable factors for injunctive relief is more appropriate under a modified *de novo* review.  However, *Miller* does not support this position because the court in *Miller* did not stop at the "stay put" provision, but proceeded to consider whether APS met the equitable factors for traditional injunctive relief.

The Court finds that the IDEA's "stay put" provision does not preclude an inquiry into whether injunctive relief is appropriate to delay or modify those provisions for several reasons.  First, the IDEA statute and relevant case law establishes that the "stay put" provision "does not displace the federal judiciary's ability to enter a preliminary injunction. *Meza v. Bd. Of Educ.,* 2011 WL 1128876, at *10 (a party "may seek to modify a stay-put order through a preliminary injunction, in which case a 'district court [i]s required to examine the validity of the existing

'stay put' order and to balance the equities'"). Second, the "stay put" provision, which is not defined in the statute, effects a stay on a child's "then-current educational placement." 20 U.S.C. §1415(j). There is some question as to whether the provision applies to compensatory education—or in this case, payment for *future* services mandated by the DPHO. *See Miller,* 565 F.3d at 1252, n.13 (declining to "resolve the thorny legal issues related to whether compensatory education may be deemed a "then-current educational placement" for purposes of the stay-put provisions"); *Erickson v. APS*, 199 F.3d 1116, 1121 (10th Cir. 1999) (purpose of the "stay put" provision is "to prevent school districts from effecting unilateral change in a child's educational program); *DeLeon v. Susquehanna Cmty. Sch. Dist.,* 747 F.2d 149, 152 (3d Cir.1984)(stating that the threshold question is whether there is a proposed change in "educational placement"); *N.D. ex rel. parents acting as guardians ad litem v. Hawaii Dept. of Educ*., 600 F.3d 1104, 1116 (9th Cir. 2010) (system-wide changes, such as teacher furloughs and concurrent shut down of public schools is not a change in the educational placement of disabled children that would trigger the IDEA's stay put provision); *cmp. Laster v. District of Columbia,* 394 F. Supp 2d 60, 64 (D.D.C. 2005) (meaning of term "then-current educational placement . . . falls somewhere between the physical school attended by a child and the abstract goals of a child's IEP").[3] Third and last, preventing a school district from challenging the application of the "stay put" provision would run afoul of language in the IDEA statute which permits "[a]ny party aggrieved" to seek district court review of an adverse decision from the IDEA administrative process. *Miller ex rel. S.M. v. Board of Educ. of Albuquerque Public Schools*, 565 F.3d 1232, 1251 (10th Cir. 2009).

---

[3] However, in *Bd. Of Educ. of APS v. Miller,* 2005 WL 6168485, (D.N.M. 2005), the district court concluded that reimbursement ordered by the AAO in that case constituted "part of the 'current educational placement" for purposes of the IDEA's 'stay put' provision," and that the school could not postpone its duty to reimburse the parents for private tutoring services. *Id.* at *4. The district court then proceeded to conduct an analysis under the equitable factors for injunctive relief but found that APS had not shown irreparable harm would result if the injunction was not granted. *Id.* at *5.

Thus the Court's inquiry for this motion is not whether the "stay put" provision applies, but whether APS has satisfied all the factors for injunctive relief in order to modify or delay  the portion of the Final Decision mandating that APS reimburse Defendants for 40 hours of *private* SLT.

## II.     Defendants' Request for Injunctive Relief

Before a district court may issue a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure, the moving party must demonstrate that four equitable factors weigh in favor of the injunction: (1) irreparable injury in the absence of the injunction, (2) the threatened injury to the moving party outweighs the harm to the opposing party resulting from the injunction, (3) the injunction is not adverse to the public interest, and (4) the moving party has a substantial likelihood of success on the merits. *Westar Energy, Inc. v. Lake*, 552 F.3d 1215, 1224 (10th Cir. 2009).  As the movant, APS bears the burden of proof.  *Resolution Trust Corp. v. Cruce,* 972 F.2d 1195, 1198 (10th Cir. 1992).

### A.     Irreparable Harm

APS argues that it will suffer irreparable financial harm if forced to use public money for private services when equivalent compensatory education services may be provided to M.M. using existing, in-house services.  APS also points out that if it reimburses Defendants for the SLT services for the several thousands of dollars such services will cost, there is no mechanism or guarantee that APS could recoup the public money paid to Defendants as reimbursement.  *See Millburn Twp. Bd. of Educ. v. M.P.*,  2016 WL 311260, at *7 (D.N.J. Jan. 26, 2016) ("There is no specific mechanism under the IDEA through which the District could seek a return of the money if this Court ultimately rules in its favor."); *Jenkins v. Squillacote*, 935 F.2d 303, 307 n. 3 (D.C. Cir. 1991) (finding "[i]t would be absurd to imagine a trial court ordering parents to reimburse a

school system for the costs of a hearing examiner's erroneous placement of their child, and any such order would clearly be an abuse of discretion. . . .").

Financial or economic harm is ordinarily reparable because such harm is compensable by monetary damages. *See Schrier vs. University of Colorado,* 427 F.3d 1253 (10th Cir. 2005). However, the Tenth Circuit has held in the context of preliminary injunctions that "monetary damages that cannot later be recovered" are an irreparable harm. *Chamber of Commerce of U.S. v. Edmondson,* 594 F.3d 742, 771 (10th Cir. 2010), cited in *Meza v. Board of Educ. of the Portales Municipal Schools*, 2011 WL 1128876, at *18 (D.N.M., 2011); *Greater Yellowstone Coal. v. Flowers,* 321 F.3d 1250, 1258 (10th Cir.2003)("An irreparable harm requirement is met if a plaintiff demonstrates a significant risk that he or she will experience harm that cannot be compensated after the fact by monetary damages").  However, in the context of a school board paying for special education costs under the IDEA, courts have found that financial harm is irreparable because the school board may not be able to seek or obtain reimbursement from the parents if the school board ultimately prevails in the dispute.  *D.C. v. Masucci,* 13 F.Supp.3d 33, 41 (D.D.C. 2014) ("any tuition or related costs paid by the District . . . would not be recoverable by the District"), cited in *Willington Bd. of Educ. v. G.W.*, 2015 WL 4164876, at *12 (D.Conn.,2015);  *Town of Burlington v. Dep't of Educ. for Com. of Mass.,* 736 F.2d 773, 800 (1st Cir.1984) ("Retroactive reimbursement by parents is not 'appropriate' relief where parents relied on and implemented a state administrative decision in their favor ordering a particular placement."); *Meza v. Board of Educ. of the Portales Municipal Schools*, 2011 WL 1128876, at *18 (D.N.M.,2011) (finding that school district faced irreparable financial harm from implementing the DPHO order because it "would likely be unable to recoup costs associated with implementing the Order if it prevails in this case").

Defendants reject Plaintiff's claim of irreparable harm, observing that APS will have to pay for compensatory education outside of the school day under any scenario, since APS would still have to expend additional funds to pay its own therapists for services provided either after school or during the summer.  Defendants argue that the DPHO's order set apart two categories of SLT (12 hours of in-house through M.M.'s IEP and 40 hours of private therapy) to ensure that M.M. received additional SLT that did not interfere with his other school educational services. Defendants contend that APS would thus have to expend money on after-school SLT services, whether paying its own therapists for extra hours of service provided outside of the school day or year, or by paying private therapists. According to Defendants, Plaintiff's inability to recoup any reimbursement made to M.M.'s parents, should it prevail in this case, is a red herring.

However, APS contends  that it will suffer irreparable harm if it is required to use taxpayer funds to pay for private therapy services regardless of when those services are provided. Moreover, without the injunction, APS would be obligated to pay for the private SLT services pending the resolution of this case.  *See, e.g., Susquenita Sch. Dist. v. Raelee S*., 96 F.3d at 83 (school district "may be required to pay for tuition and expenses associated with a pendent placement prior to the conclusion of litigation."); *Clovis Unified Sch. Dist. v. Cal. Office of Admin. Hearings*, 903 F.2d at 641 (once parents had obtained an administrative ruling identifying the facility as the appropriate pendent placement, the school district was absolutely obligated to pay for that placement pending conclusion of the judicial proceedings).  APS contends that M.M. need not suffer any irreparable harm if the Court grants an injunction and stays the "stay put" provision because the DPHO-mandated additional 40 hours of SLT can be provided by APS staff instead of private therapists.  Plaintiff explains that SLP experts who are employed by APS can be assigned to provide compensatory services to a student outside of that

11

student's particular school day because APS employees assigned to different schools do not uniformly work certain hours and can be shifted to accommodate student needs—including providing compensatory education before or after school hours, or even when M.M.'s particular school is not in session. *See* Ex. A to Reply, Soo Hoo Aff. Many APS schools are in session on a non-traditional school calendar and operate year-round, and so APS can assign its staff and contract therapists to work a different shift that accommodates a student's schedule outside of that student's school day. In essence, Plaintiff does not take issue with providing an additional 40 hours of SLT, but only providing those services privately. Plaintiff maintains that APS is "fully able and qualified" to provide SLT services to M.M., and thus there is no need for the school district to pay thousands of dollars for therapy when those therapy services can be provided by qualified APS staff at no extra cost to APS.

The estimated cost of providing 40 hours of private SLT is $5,000. Defendants contend that APS cannot reasonably argue that an expenditure of this amount is a hardship when APS has a budget of $1.3 billion, *see* Doc. 8 at 1, n.1, and a $5,000.00 expenditure on this sizeable budget is negligible. *See* Doc. 8 at 6. However, as APS correctly points out, the standard is whether APS will suffer irreparable harm, not whether it will suffer a financial "hardship." Because application of the "stay put" provision would force APS to pay thousands of dollars to duplicate services that are already paid for in the existing APS budget from APS staff that are fully qualified to render those services, and because APS would not be able to recoup that money if it prevails on the merits, the Court finds that Plaintiff would suffer irreparable harm if an injunction was not granted.[4]

---

[4]   Interestingly, Defendants do not address the fact that the IDEA provides no mechanism for APS to recoup from M.M.'s Parents any public funds given to them as reimbursement for private SLT services.

The harm to M.M. would not be irremedial if the additional 40 hours of SLT services were provided to him by APS staff.  There is nothing on the Record in this case suggesting that APS SLT therapists cannot perform these services equal to private therapists.  In fact, the DPHO found just the opposite, stating that that the Parents' decision to withdraw M.M. from the school "was not justified" and that the school employed speech and language specialists and "had resources available that could be used to put in place an appropriate program" for M.M.  Fin. Dec. at 25.  She also found that APS employs speech and language specialists knowledgeable about autism and about specialized instructional practices shown by research to be effective for students with autism.  Fin. Dec. at 29, ¶¶6-7.  Thus, granting the injunction would have the effect of preventing public funds from being used for private SLT services for M.M., and under an injunction issued by this Court, APS would still be required to provide these additional hours to M.M. using APS staff.

Defendants point to *Bd. Of Educ. of APS v. Miller ex rel. S.M.,* in which the court rejected APS' contention that it would suffer irreparable harm if it reimbursed the student's parents for private tutoring services.  2005 WL 6168485, at *5 (D.N.M. 2005).  In that case, the district court found that courts addressing similar issues have concluded that the injury to a school district is "de minimis compared to the harm of a child not receiving the appropriate education to which he or she is entitled."  Defendants argue that any harm APS would suffer here is also de minimis.  This may be true, but the more obvious distinction between *Miller* and the instant case is that if the stay put provision is enjoined, M.M. would continue to receive SLT services from APS therapists.  In contrast, an injunction in the *Miller* case would have meant that the student would not be receiving any services while the injunction as in place.  Thus, the irreparable harm

factor weighs in favor of the school district because APS will not be able to recoup any of the taxpayer money spent to reimburse M.M.'s parents for private speech therapy.

      B.     <u>Balance of Harms</u>

Plaintiff contends that, unlike the injury APS will experience unless a stay is issued, by comparison, M.M. does not face any significant risk of harm because the Final Decision contained no findings suggesting that APS could not offer the same additional 40 hours of speech and language therapy mandated by the DPHO as private services. As mentioned above, the DPHO found the problem to be that the IEP did not adequately consider M.M.'s "need for intensive, autism-specific techniques and services. . . ." *Id.* at 27. However, APS never had the chance to institute these services because the parents withdrew M.M. from school after only two days in an Emerging Autism class, which the DPHO described as "not justified." The DPHO found that the parents acted "unilaterally and impulsively in pulling Student out of school" and that they did not give APS a chance to provide appropriate communication services for M.M. Fin. Dec. at 26 ("[APS] deserved more than two days to put in place services for Student . . . .").

Plaintiff seeks a stay of the DPHO's Final Decision, but a district court has the authority to "modify" a DPHO Order by considering the equities. *See Meza v. Board of Educ. of the Portales Municipal Schools*, 2011 WL 1128876, at *11 (D.N.M.,2011) ("Because Portales Schools seeks to modify or forestall the DPHO's Order, the Court must balance the equities"). The Court notes that the DPHO ordered that M.M. would continue to receive 12 hours of SLT services through his IEP in school. Instead of granting a complete stay on the Final Order, which could delay M.M. receiving any of the additional 40 hours of SLT, an injunction could issue which would provide that during the pendency of the lawsuit, the additional 40 hours would also be provided by APS therapists. A denial of the injunction would force APS to pay for 40 hours

of private therapy at an additional cost.  Even if APS prevails on the merits later, it still "loses" because it will never be reimbursed its costs for those services. On the other hand, granting an injunction that modifies the DPHO's ruling to provide SLT services by APS therapists during the pendency of the lawsuit would not result in any harm to M.M., who would continue to get speech and language services provided by APS at no extra cost to the district. Should Defendants prevail in this case on this issue, then SLT services provided subsequent to the decision on the merits would be provided privately.

C.    Public Interest

Plaintiff contends that an injunction would not be adverse to the public interest.  The DPHO's Order, which Plaintiff views as violating the IDEA, is costly to taxpayers.  To be sure, there is more than one public interest to be considered here: one is the interest promoted by the IDEA, which is to enable children with disabilities to receive an adequate education.  The other is the obvious public interest in ensuring that public monies are spent reasonably and in accordance with applicable federal and state statutes.  In this situation, the two public interests are not at odds with each other, and form only one interest to consider: that public funds are used responsibly in carrying out the objectives of the IDEA.

In this case, the Court finds that it is not in public's interest to spend thousands of taxpayers' dollars on unnecessary private SLT services when APS employs specialists fully able and qualified to provide these SLT services to M.M. in house. Also,  allowing APS to utilize its own SLT specialists, these SLT services for M.M. will not be either denied or delayed.

D.    Success on Merits

Plaintiff contends that APS will likely prevail on the merits on two grounds: (1) The DPHO exceeded her statutory authority by ordering compensatory relief that is unsupported by

the Administrative Record ; and (2) the compensatory education award constitutes a windfall to Defendants because they are monetary and/or punitive damages that are not permitted by the IDEA.

### 1.    Support for Award in Record

An award for compensatory education is an equitable remedy that has been defined as "discretionary, prospective, injunctive relief crafted by a court to remedy what might be termed an educational deficit created by an educational agency's failure over a given period of time to provide FAPE to a student." *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 518, 523 (D.C. Cir. 2005); citing *G et al v Fort Bragg Dependent Sch.,* 343 F.3d 295, 309 (4th Cir. 2003). Courts have generally rejected a strict hour-per-hour calculation of compensatory education (where each hour of denied FAPE means an award equal to an hour of compensatory education) because it runs counter to the both the "broad discretion" afforded by IDEA's remedial provision and the substantive FAPE standard that provision is meant to enforce. *Reid,* 401 F.3d at 523-24 (finding it "highly incongruous" if qualitative focus on individual needs "gave way to mechanical hour-counting" and that awards compensating past violations must "rely on individualized assessments").  Appropriate relief is "relief designed to ensure that the student is appropriately educated within the meaning of the IDEA." *Reid,* 401 F.3d at 365 (citing *Parents of Student W et al., v. Puyallup Sch. Distr. No. 3,* 31 F.3d 1489, 1497 (9th Cir. 1994)).

At the same time, however, a DPHO does not have unbounded discretion in fashioning equitable relief under the IDEAL.  An award under the IDEA "must be fact-specific" and "reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school should have supplied in the first place." *Meza,* 2011 WL 1128876 at *16 (citing *Reid,* 401 F.3d at 524) (hearing officer's order contains neither reasoning

to support hour-per-day formula nor factual findings showing that the 810-hour compensatory education result satisfied student's needs); *see also* NMAC 6.31.2.13(I)(10)(c) (hearing officer is responsible for "[reaching] a decision, which shall include written findings of fact, conclusions of law, and reasons for these findings and conclusions and **shall be based solely on evidence presented at the hearing.**" NMAC 6.31.2.13(I)(10)(c) (emphasis added).   Thus, while a compensatory education award should not be based on a mechanical hour-counting method, the award must be tied to and supported by the Record.

Plaintiff compares this case to the situation in *Meza,* where the same DPHO had ordered compensatory services for a period of one year as "compensation" for a FAPE violation that lasted five weeks.   In that case, the DPHO found that Portales Schools failed to provide the student with FAPE when he was on homebound services during a certain period of time in the school year.   The DPHO ordered the development of a new IEP using the input of a consulting team including the University of New Mexico ("UNM") Center for Development and Disability and medical personnel, and that this team would oversee the student's education program for a period of one year.   In *Meza,* the Portales school district sought to change the conditions of the DPHO's Order on appeal to the district court.   In that case, the district court found that the DPHO exceeded her authority when she delegated decisionmaking to the IEP team and the UNM consultant team, and because she did not tie the equitable relief ordered to the record, the district court could not determine if the DPHO appropriately compensated the student for a deprivation of FAPE:

> [w]ithout an explanation why the DPHO chose a length of one year involvement for the Consultant team, the Court is unable to determine if the DPHO appropriately compensated (the student) M.P. for his deprivation of FAPE.

*Meza,* 2011 WL 1128876, at *17 (citing *Reid,* 401 F.3d at 524) (the inquiry "must be fact-specific and accomplish IDEA's purposes"). For these reasons, the district court concluded that the school district was likely to succeed on the merits. *Id.*

In this case, the DPHO determined that APS deprived M.M. of a FAPE during a four and one-half month period, from August 15, 2015 until January 30, 2016. Fin. Dec. at 20, ¶7. She determined that M.M. requires 2.86 hours of SLT per month. *Id.* Plaintiff contends that applying an hour-for hour compensation would require that APS provide only about 13 hours of SLT to M.M. to cover the four and one-half month period, instead of the 40 hours awarded by the DPHO. Plaintiff is incorrect in arguing that M.M. should be awarded SLT on a day-by-day accounting to remedy a denial of FAPE because there is "no obligation to provide a day-for-day compensation for time missed." *Reid,* 401 F.3d at 365 (citing *Parents of Student W et al., v. Puyallup Sch. Distr. No. 3,* 31 F.3d 1489, 1497 (9th Cir. 1994)). On the other hand, Plaintiff is correct in insisting that the DPHO's inquiry be "fact-specific" and "the ultimate award must be reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place." *Reid,* 41 F.3d at 524; *Mary McLeod Bethune Day Academy Public Charter School v. Bland*, 534 F.Supp.2d 109, 115 (D.D.C.,2008) ("An arbitrary compensatory education award will never pass muster under the *Reid* standard").

Plaintiff also contends that the compensatory education award is further unsupported by the record because there is nothing on record to support an award for *private* services. There was no evidence presented at the five-day hearing that APS does not have competent, trained and experienced professionals who can provide SLT services to M.M. in-house. In fact, the DPHO found just the opposite. Fin. Dec. at 10, ¶23 (noting that member of District's Autism Resources

Team ["ART"] offered assistance in setting up functional communication system for student, but neither student's teacher nor his SLP accepted that assistance").  In her findings, the DPHO acknowledged APS' ability to provide these services.  She ordered that a new IEP team be created for M.M. which would include a speech and language specialist who is a member of the ART as well as a Certified Behavior Analyst (Fin. Dec. at 27, ¶2); ordered that an APS-employed speech and language pathologist ("SLP") who is a member of the ART put into place a communication system for M.M. in his classroom (*Id.* at 29, ¶6); and ordered that APS assign M.M., a SLP who is "knowledgeable about autism and about specialized instructional practices … effective for students with autism (*Id.* at 29, ¶7)."

Defendants contend that *Meza* does not apply here because the IEP-based remedy in *Meza* is unlike the reimbursement for private services mandated by the DPHO in this case.  This is a distinction without a difference, because a hearing officer's findings and conclusions must be tied to the record regardless of the remedy chosen to provide FAPE.  Thus, while the DPHO was not required to utilize a day-by-day accounting to remedy the denial of FAPE, she was obligated to connect the need for 40 additional hours of SLT to remedy the deprivation of FAPE during a four and one-half month period, particularly when the DPHO determined that M.M. required 2.86 hours of SLT per month.

Defendants argue that any consideration of the merits at this point is premature, and that whether the DPHO sufficiently explained the basis for her decision should wait until the Court conducts the required *modified de novo* review of the record.  However, under this argument, a district court should refrain from considering traditional preliminary injunction analysis in all appeals of DPHO final decisions—which is contrary to relevant case law.

    2.    *Compensatory Award as a Windfall*

Plaintiff also contends that the DPHO's order to use *public* funds to reimburse M.M.'s parents for the expense of 40 hours of *private* SLT is not permissible under the IDEA.

Damages awarded under the IDEA are individually-tailored, compensatory equitable relief.  There is no claim for money damages or punitive damages under the IDEA.  *Bell v. Board of Educ. of Albuquerque Public Schools*, 652 F.Supp.2d 1211, 1214 (D.N.M.,2008) (citing First, Sixth and Eleventh Circuit cases). The purpose of the IDEA is to provide educational services, not compensation for personal injury.  *See Polera v. Bd. of Educ. of Newburgh Enlarged City Dist*., 288 F.3d 478, 481 (2d Cir.2002) (monetary damages are not available under the IDEA); *Diaz-Fonseca v. Puerto Rico,* 451 F.3d 13, 31 (1st Cir. 2006) (money damages not available in IDEA as a "tort-like mechanism for compensating personal injury").

Plaintiff contends that M.M. could have been ensured of FAPE in his classroom setting because APS was able to provide SLT services in-house.  Therefore, the DPHO's ordering of 40 hours of *private* SLT services (in addition to the 12 hours or 720 minutes per semester of SLT services ordered by the DPHO through M.M.'s new IEP) at District expense amounts to an impermissible monetary and punitive damages award not permitted by the IDEA.  Since private services have a cash value, Plaintiff argues that the DPHO's remedy essentially confers a monetary benefit on M.M.'s parents, and it extracts a punitive fine from APS by forcing APS to buy services for which it and taxpayers are already paying.  Plaintiff claims that this is not only impermissible under the IDEA's remedial scheme but unnecessary when APS has its own fully able and qualified in-house providers who have expertise in autism.

Plaintiff's argument is not supported by the facts in this case.  It is true that an IDEA claimant is not entitled to prospective relief, or for general compensatory or punitive damages allowed in a case alleging denial of FAPE under the IDEA. For example, in *Diaz-Fonseca v.*

*Puerto Rico*, the First Circuit vacated a jury verdict award of compensatory and punitive damages against the school district defendants, leaving intact only the award of reimbursement for the sum of private school tuition and costs for transportation and psychological services incurred. 451 F.3d 13, 32 (1st Cir. 2006) (parent not entitled to be reimbursed for educational expenses that she has yet to pay, and was entitled to "no more than the sum of the educational expenses *she has already paid*—that is, the sum of Lyssette's private school tuition and costs for transportation") (emphasis in original).

While an award of general damages for compensating personal injury is not allowed under the IDEA, relief under the IDEA can include monetary reimbursement for parents who place children in a private school rather than accept a deficient public school IEP.  *School Committee of the Town of Burlington, Massachusetts v. Department of Education of Massachusetts,* 471 U.S. 359, 369 (1985).  Because the IDEA permits reimbursement for educational services, courts have reasoned that it must also allow awards of the services themselves.  *See Bd. Of Educ. Of Oak Park & River Forest High Sch. Distr. 200 v. Illinois State Bd. Of Educ., et al.,* 79 F.3d 654, 655-56 (7th Cir. 1996); *Pihl et al. v. Massachusetts Dept. of Educ. Et al.,* 9 F.3d 184, 188-89 (1st Cir. 1993); *Miener et al v. State of Missouri et al.,* 800 F.2d 749, 753 (8th Cir. 1986), cited in *Reid,* 401 F.3d at 518.

Here as well, M.M.'s parents would not be entitled to prospective relief or payment for *future* services.  However, the DPHO did not order APS to pay M.M.'s parents for SLT services not yet rendered, but based on the language used by the DPHO in the Final Decision, the parents were expected to front the cost of compensatory private speech therapy services and then be "reimbursed" by APS.  *See* Fin.Dec. at 30, ¶8 ("The District shall reimburse Parents for the cost of this therapy.").

While this last argument of Plaintiff's would likely fail, its other arguments would likely prevail on the merits, namely, that the DPHO's mandate of 40 hours OR that this therapy be provided privately was not tied to any evidence on the Record.  Therefore, the Court finds in favor of Plaintiff on this last factor required for injunctive relief.

The Court therefore GRANTS the injunction, and specifically modifies the "stay put" provision by deferring any provision of *private* speech therapy services for M.M., while at the same time requiring APS to provide 13 hours of SLT services (which is at the least, a day-by-day accounting of a denial of FAPE) in addition to the 12 hours (or 720 minutes) of SLT services ordered by the DPHO through M.M.'s new IEP pending the resolution of this case.  The provision of these additional 13 hours ensures that the provision of SLT services for M.M. minimizes any harm to M.M. which could be caused by a delay in services while at the same time preserving the issues raised in this claim for consideration on the merits.

## CONCLUSION

In sum, the Court finds and concludes that Plaintiff has satisfied the requirements for injunctive relief.  The Court also finds and concludes that it is appropriate to issue a stay on the DPHO's Final Decision which modifies the DPHO's ruling regarding the provision of an additional 40 hours of SLT; namely that during the pendency of this lawsuit, the additional 40 hours shall be provided by APS therapists.  *See* 20 U.S.C. §1415(i)(2)(B)(iii) (district court empowered to "grant such relief as the court determines is appropriate").


**SO ORDERED**

 

_____
UNITED STATES DISTRICT JUDGE